UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

PARK WEST GALLERIES, INC.

        Plaintiff,

  -v-                                              No. 19 CV 3360-LTS-GWG

ALP, INC.

        Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Park West Galleries, Inc. ("Plaintiff" or "Park West"), brings this action against ALP, Inc. ("Defendant" or "ALP"), seeking a declaratory judgment that a purchase agreement ("the Agreement") concerning particular Peter Max paintings, known colloquially as "Peter's Keepers," is valid and enforceable, and seeking damages for breach of contract and breach of the implied covenant of good faith and fair dealing. (Docket Entry No. 1.) Put generally, the complaint alleges that ALP is improperly seeking to defeat the exercise of Park West's claimed rights under the Agreement. The day after Plaintiff filed its complaint in this action, Defendant filed suit in New York state court (the "State Court Action"). The following day, Defendant obtained a temporary restraining order from the state court prohibiting Park West from selling or in any other way interfering with Peter's Keepers. Defendant moves to dismiss the instant complaint as an improper anticipatory filing, or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1332.

The Court has carefully considered all of the parties' submissions and, for the following reasons, grants ALP's motion to dismiss the complaint as an improper anticipatory filing.

## BACKGROUND

The following recitation of relevant facts is drawn from the Complaint (Docket Entry No. 1), the factual content of which is taken as true for the purposes of this decision, as well as from the submissions of the parties as they relate to the issue of anticipatory filing.[1]

Park West is an art dealer with a long history of selling Peter Max's works and ALP is the administrator of Peter Max's artworks. Prior to the commencement of this case and the State Court Action, there was longstanding litigation in New York state court among the family members of Peter Max surrounding the ownership and control of ALP, Inc. As relevant here, ALP contends that the Agreement was entered into, and the sale transaction involving Peter's Keepers performed surreptitiously, by Peter Max's son when he had been removed from control of ALP, which is now headed by Peter Max's daughter. Park West alleges that it entered into the Agreement in October 2018, paid the down payment in December 2018, took delivery of the artwork in January 2019, and paid the $14.6 million purchase price in full by February 2019, all without knowledge of what ALP claims was the December 2018, removal of the son's authority to enter into transactions valued at over $25,000 and the son's removal as head of the

---

[1] The filings that the Court has considered and relied upon in determining whether the Complaint was an improper anticipatory filing are: the Declaration of Jeffrey M. Eilender in Support of Defendant's Motion to Dismiss ("Eilender Decl."), Transcript of Oral Argument Proceedings regarding Plaintiff's Application for a TRO ("Tr."), Declaration of Luke Nikas in Opposition to Defendant's Motion to Dismiss ("Nikas MTD Decl."), and Declaration of Paul J. Schwiep in Opposition to Defendant's Motion to Dismiss ("Schwiep Decl."). (Docket Entry Nos. 25, 28, 33, 34.)

company in January 2018.  ALP claims that the purchase agreement was backdated, that the artwork's true value exceeds $100 million, and that the artwork was never meant to be sold.

On April 5, 2019, Jeffrey Eilender ("Eilender"), counsel for ALP, sent a letter to counsel for Park West, Luke Nikas ("Nikas"), asserting that ALP had reason to question the validity of the Agreement although, at that time, the "inquiry [was] still continuing, and ALP ha[d] no desire to be in an adversarial posture with Park West."  (Eilender Decl., Ex. 4, at 3.)  In the letter, ALP directed Park West that it should "not sell, transfer, encumber or otherwise dispose of any . . . works that are still in its custody . . . [and that it should] immediately provide . . . a list of [the artwork] and their location, as well as a list of the items already sold or transferred . . . ."  (Id.)  The letter also asked Nikas to "confirm in writing Park West's agreement to this stand still."  (Id.)  On April 8, 2019, Nikas responded to Eilender's letter, asserting that, while Park West also did not want to be adversarial with ALP, the contentions by Eilender were "meritless," representing that agreeing to the standstill would "cause Park West enormous damage," and stating that, if ALP moved to interfere, Park West would "take all necessary steps."  (Eilender Decl., Ex. 5, at 2.)  Between April 8 and April 13, 2019, Eilender and Nikas exchanged emails and phone calls attempting to resolve the issue.  (Eilender Decl., Exs. 5, 6, 7, 8.)

On April 9, 2019, Eilender and Nikas spoke over the phone (Eilender Decl., at ¶ 15; Nikas MTD Decl., at ¶ 9) and, on April 11, 2019, Nikas, Eilender, and Mr. Paul J. Schwiep ("Schwiep") – Park West's outside counsel – held a conference call in which they continued to discuss the standstill.  (Eilender Decl., at ¶ 17; Nikas MTD Decl., at ¶ 10; Schwiep Decl., at ¶¶ 2-3.)  The parties provide conflicting accounts of these conversations.  (Eilender Decl., at ¶ 17; Nikas MTD Decl., at ¶¶ 9-10; Schwiep Decl., at ¶¶ 6-8.)  Eilender asserts that he specifically

recalls having used the words "sue" and "TRO," during the April 11, 2019, conversation, and attests that after asking Nikas "where he would be in the next few days . . . so [the] TRO hearing . . .would be at a time convenient for him," Nikas responded that he was "unavailable the next day . . . but that he was generally available the following week," and that Eilender's co-counsel Schwiep, who was conferenced into the call, instructed that "Park west should be served with a summons and complaint in the normal course as provided for in the applicable civil procedure rules." (Eilender Decl., at ¶ 17.) Nikas, on the other hand, proffers that "at no time during the call did Mr. Eilender provide clear notice that ALP intended to sue Park West." (Nikas MTD Decl., at ¶ 10.) However, Nikas acknowledges that Eilender "alluded to the possibility of a litigation and asked whether I would be available for an Order to Show Cause hearing if the parties could not resolve their dispute . . . ." (Id. at ¶ 10.) Nikas also states that he "believed at the end of the call . . . that ALP did not, at that point, intend to sue." (Id.)

On April 12, 2019, Nikas sent an email to Eilender outlining tentative plans for their respective clients to meet and discuss the proposed standstill, stating that "[i]t would be unfortunate if the parties' relationship ended in litigation without availing themselves of this opportunity to meet face-to-face." (Eilender Decl., Ex. 8, at 4.) When the parties could not find a time to meet, Eilender responded, stating, "it would be a real pity for these partners to end up in litigation which is why I reached out to you in the first place." (Id. at 3.) Eilender reiterated ALP's demand for an "informal, very short standstill" of the approximately "10 or 20 pieces set for auction in th[at] coming week" pending a meeting between the parties' principals. (Id.) The next day, April 13, 2019, Nikas emailed Eilender, stating, "we will not agree to a standstill, which would cause Park West considerable damage." (Id. at 2.)

Subsequently, on April 15, 2019, Park West filed the above-captioned action against ALP.  ALP commenced a lawsuit against Park West in New York state court the next day, premised on the same underlying facts as this action.  See ALP, Inc. v. Park West Galleries, Inc., Index No. 0153949/2019 (N.Y. Sup. Ct.).  On April 17, 2019, ALP sought and was granted a TRO and Order to Show Cause against Park West in the State Court Action, prohibiting Park West from selling or in any other way interfering with the artwork in question.  (See generally Eilender Decl., Ex. 10.)  Upon notice from Eilender that ALP would seek a TRO in state court, Park West tendered its own TRO application in this court on the same day, April 17, 2019.  (See Docket Entry Nos. 13-15.)  During oral argument on Park West's application in this court, both Eilender and Nikas proffered their recollections of the phone conversation that took place on April 11, 2019.  Eilender recalled stating, "if there's not going to be a standstill, we're going to go for a TRO."  (Tr. at 26:14-17.)  Nikas recalled Eilender asking, "[i]f we move forward with a lawsuit, where will you be next week?" to which Nikas responded, "I will get you my schedule."  (Id. at 27:17-20.)  Following oral argument this Court, having been informed that the state court had already issued a TRO prohibiting Park West from selling or interfering with the artwork, denied Park West's request for a TRO prohibiting ALP from interfering with Park West's dealings with the artwork.  (Docket Entry No. 13.)

In the Complaint, Park West seeks a declaratory judgment that the Agreement is valid and enforceable, as well as damages for breach of contract and breach of the implied covenant of good faith and fair dealing.  ALP moves to dismiss the Complaint with prejudice, or in the alternative, for a stay of this action pending a verdict in the State Court Action, and argues that (1) under the "special circumstances" exception to the "first-filed rule" that the Complaint was an improper anticipatory filing and thus must be dismissed in favor of the second-filed suit

(the State Court Action) or, in the alternative, that (2) Plaintiff's breach of contract and breach of implied covenant of good faith and fair dealing arguments fail to state claims on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

DISCUSSION

The "first-filed rule" generally requires that, where there are two competing lawsuits, the "first suit should have priority."  Employers Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008) (quoting First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)).  If the rule applies, there is a strong presumption that a later lawsuit will be dismissed in favor of the first filed lawsuit.  Adam et al. v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991).  However, this presumption may be "rebutted by proof of the desirability of proceeding in the forum of the second-filed action."  Employers Ins. of Wausau, 522 F.3d at 275 (internal citation omitted).  Thus, the first-filed suit will take priority, barring a situation "where the 'balance of convenience' favors the second-filed action . . . [or] where 'special circumstances' warrant giving priority to the second suit."  Id. (internal citations omitted).

To justify departure from the first-filed rule, the "plaintiff in the second-filed suit has the burden to establish that special circumstances exist, so as to overcome the presumption in favor of the first-filed suit."  Oleg Cassini, Inc. v. Serta Inc, No. 11-CIV-8751 (PAE), 2012 WL 844284, at *4 (S.D.N.Y. Mar. 13, 2012).  "Special circumstances" exist where, as relevant here, the "first-filed lawsuit is an improper anticipatory declaratory judgment action" – "an action filed in response to a specific, direct threat of litigation."  Employers Ins. of Wausau. 522 F.3d at 275-76; see also Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) (anticipatory filing "is one made under the apparent threat of a presumed adversary filing the

mirror image of that suit" in another court). Special circumstances also exist "where forum shopping alone motivated the choice of the situs for the first suit." Employers Ins. of Wausau, 522 F.3d at 276 (citation omitted). Defendant argues that the instant action is an improper anticipatory filing and was motivated by forum shopping, and thus should be dismissed or stayed in favor of the second-filed State Court Action.

Courts in this Circuit have considered a variety of circumstances in determining whether an action was preceded by a "specific, direct threat of litigation." Employers Ins. of Wausau v. Fox, 522 F.3d at 277. Facts that have been found material include, but are not limited to, "a notice letter [that] informs a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit," J. Lyons & Co. v. Republic of Tea, 892 F. Supp. 486, 491 (2d Cir. 1995); the time between the notice letter and the declaratory judgment complaint, see Oleg Cassini, Inc., 2012 WL 844284 at *6; and whether the second-filing plaintiff had expressed that it "hoped to avoid litigation." Employers Ins. of Wausau v. Prudential Ins. Co., 763 F. Supp. 46, 49 (S.D.N.Y. 1991).

As these illustrations make clear, rebutting the "first-filed presumption is [a] highly fact dependent" inquiry. Oleg Cassini, Inc., 2020 WL 844284 at *4 (citing Schnabel v. Ramsey Quantitative Sys., 322 F. Supp. 2d 505, 511-12 (S.D.N.Y. 2004)). Accordingly, when weighing the relevant facts, courts should not seek to apply a bright-line rule but instead "consider[] the totality of the events." BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., 21 F. App'x 52, 56 (2d Cir. 2001).

The Court therefore turns to material undisputed aspects of the parties' proffers as to the events preceding the filing of this action in considering whether ALP has carried its burden of establishing that Park West filed the instant complaint in response to a specific, direct threat of

litigation.  The Court finds that ALP has carried its burden, and, for the following reasons, dismisses the complaint.

Throughout the communications between April 5 and 13, 2019, ALP clearly expressed its desire that Park West temporarily cease selling Peter's Keepers.  (See, e.g., Eilender Decl., Ex. 4, at 3.)  ALP also clearly stated that it was hesitant to take legal action while seeking a standstill.  (Id.)  Crucially, while the parties dispute the precise words spoken during the April 11, 2019, phone call, the parties agree that Eilender asked whether Nikas would be available to litigate injunction proceedings the following week if Park West did not agree to standstill.  (See Eilender Decl., at ¶ 17 (asking Nikas "where he would be in the next few days . . . so [the] TRO hearing . . .would be at a time convenient for him"); Nikas MTD Decl., at ¶ 10 (Eilender "asked whether I would be available for an Order to Show Cause hearing if the parties could not resolve their dispute."))  The recollections of Nikas and Eilender of that phone conversation that were presented at oral argument before this Court on April 17, 2019, confirm that there is no material dispute on this point.  (See Tr. 26-27.)  Eilender recalled stating, "if there's not going to be a standstill, we're going to go for a TRO."  (Tr. 26:14-17.)  Nikas recalled that Eilender asked, "if we move forward with a lawsuit, where will you be next week?" (Id. at 27:17-20), and that Nikas himself responded, "I will get you my schedule."  (Id.)

The Court finds that the above statements, considered in the context of the email communications and the notice letter, provided Park West with notice that ALP would commence litigation and seek an injunction the following week if Park West did not agree to the standstill.  The absence of an identified "filing date, and/or a specific forum" is not fatal to the claim of anticipatory filing.  "[W]hile it may be preferable for the notice [letter] to cover all three [of the J. Lyons factors], any of the factors is sufficient to provide adequate notice."  Chicago

Ins. Co. v. Holzer, No. 00-CIV-1062 (SAS), 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000) (referring to the J. Lyons factors of a "notice letter [that] informs a defendant of the intention to file suit, a filing date, and/or a specific forum,") (quoting J. Lyons, 892 F. Supp. at 491); see, e.g., Cephalon, Inc. v. Travelers Companies, 935 F. Supp. 2d 609, 615 (S.D.N.Y. 2013) (finding a "clear statement of . . . intention to file suit" and clarifying that an anticipatory filing does not require a notice letter to state a date or forum) (citation omitted); CGI Solutions, LLC v. Sailtime Licensing Group, LLC, No. 05-CIV-4120 (DAB), 2005 WL 3097533, at *2 (S.D.N.Y. Nov. 17, 2005) (finding anticipatory filing where defendant stated that it would pursue "all civil remedies" even though a filing date was never specified).

Here, the emails and phone calls provided Park West with notice of ALP's specific, direct threat to sue if a standstill was not instituted. Once Nikas finally and definitively stated in his April 13, 2019, email that "[w]e will not agree to a standstill, which would cause Park West considerable damage," Park West had sound reason to believe that ALP would commence injunctive relief proceedings the following week. (Eilender Decl., Ex. 8, at 2.) Nikas and Eilender had discussed the possibility of litigation that following week and had already exchanged schedules for that purpose. Compare Schnabel, 322 F. Supp. 2d. at 513 (holding no notice of a lawsuit where movant's letter stated it would take all necessary action to protect its interests but did not explicitly mention a lawsuit or deadline); Oleg Cassini, Inc, 2012 WL 844284, at *6 (holding no notice where letters did not "set out an expected filing date or a timeline for filing."). Additionally, the pre-existing related litigation in New York state court was an objective indicator of the likely forum for any such application by ALP for an injunction barring Park West's continued sales of Peter's Keepers. Thus, the record amply supports ALP's

contention that this action, filed two days after Park West refused to agree to ALP's demand for a standstill, is improperly anticipatory and should yield to the second-filed State Court Action.

Park West argues that the statement in the April 5, 2019, notice letter that "ALP has no desire to be in an adversarial posture with Park West" shows that ALP did not intend to initiate litigation but, rather, hoped to avoid litigation.  (Eilender Decl., Ex. 4, at 3.)  However, Plaintiff cites the statement out of context, ignoring the remainder of the letter, which included a directive to "confirm in writing Park West's agreement to this stand still," the contentious status of the relationship between the two parties after the April 5, 2019, demand, and the communication between Eilender and Nikas subsequent to the notice letter that plainly demonstrated that litigation was imminent once Park West refused to temporarily cease selling Peter's Keepers.

Park West relies, inter alia, on the district court decision in Employers Ins. of Wausau v. Prudential Ins. Co. of America, a case in which the plaintiff was an insurance company seeking a declaration of no obligation to indemnify and the defendant was its insured. 763 F. Supp. 46, 47 (S.D.N.Y. 1991).  There, the district court found that the insured's statement that it "hoped to avoid litigation" indicated that the parties were engaged in settlement negotiations and "c[ould not] reasonably be construed as a notice of suit."  Id. at 49.  However, that court also found that nowhere in the rest of the communications had the insured "explicitly mention[ed] a lawsuit, a tentative filing date or a forum."  Id.  Because "notice of suit generally contain[s] at least one of [these] elements," and because "minimal correspondence was exchanged," the court found no special circumstances indicative of improper anticipatory litigation had been shown.  Id.  Here, by contrast, while ALP's initial notice letter expressed a desire to "avoid litigation," the remainder of the letter, the context of the exchanges, and the

subsequent communications of the parties, all indicated that ALP would bring suit if Park West did not agree to a standstill of its activities in connection with Peter's Keepers.  (See Eilender Decl., Ex. 4, at 3 (April 5, 2019 notice letter directing Nikas to "confirm in writing Park West's agreement to this stand still"); Eilender Decl., Ex. 8 (April 12, 2019 email in which Eilender clarified that ALP was not backing down from its demand for an "informal, very short standstill" of the approximately "10 or 20 pieces set for auction in th[at] coming week."); Tr. at 26:14-17 (Eilender recalled stating, "if there's not going to be a standstill, we're going to go for a TRO"); Id. 26:17-20 (Nikas recalled Eilender stating, "If we move forward with a lawsuit, where will you be next week?"); Eilender Decl., Ex. 8 (April 13, 2019 email in which Nikas reiterated that Park West would not agree to the standstill.))

The timing of Park West's filing provides an additional objective indicator that its complaint was anticipatory.  Park West filed its complaint 10 days after the April 5, 2019, notice letter, and more importantly, fewer than 48 hours after Nikas declared Park West's intent to continue its sales, (Eilender Decl., Ex. 8), suggesting that Park West moved quickly to bring suit once it had informed ALP that it would not agree to a standstill.  Therefore, the timeline of these developments suggest that the complaint was filed in anticipation of the State Court Action.

ALP has also demonstrated that Park West's filing was motived by forum shopping alone.  To establish this special circumstance, there must be evidence of forum shopping and "the first-filing plaintiff must [also] engage in some manipulative or deceptive behavior."  Employers Ins. of Wausau, 522 F.3d at 276.  The Court may "infer forum shopping from the fact that the declaratory action was filed after receipt of letter notice stating that if the sender's claim was not satisfied by a specific date, then defendant would sue."  BuddyUSA, 21 F. App'x at *55 (citing Fed. Ins. Co. v. May Dep't Stores Co., 808 F. Supp. 347 (S.D.N.Y.

1992)).  Here, Park West's declaratory judgment action was two days after it notified ALP that it would not agree to the standstill, the condition upon which ALP had indicated it would refrain from initiating litigation the following week.  Accordingly, the Court infers forum shopping from Park West's choice to file its action in this district court.  Park West was clearly aware of the ongoing litigation in New York state court relating to control of ALP and Peter Max's artwork, and the issues raised in Park West's complaint in this action are clearly related to issues being litigated in the pre-existing disputes.  However, this action was pleaded in such a way as to make it appear distinct from the matters that were proceeding before Justice Bannon, who has presided over the state court proceedings related to the management and control of ALP.  (See Eilender Decl. at ¶ 38.)  Park West's complaint did not inform the Court of the existence of the state court proceedings.  (See generally Docket Entry No. 1.)  The context of the State Court Action and the artful drafting of the instant pleading suffice to persuade the Court that Park West filed this action in order to avoid litigating these issues before Justice Bannon.

ALP has carried its burden of establishing that "special circumstances" exist which warrant departing from the first-filed rule, specifically that Park West's suit was filed in anticipation of litigation against Park West in connection with ALP's ongoing state court proceedings and in order to secure Park West's preferred forum .

CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss the complaint, without prejudice to litigation of the issues raised therein in connection with the State Court Action.  Because the Court has dismissed the complaint as an anticipatory filing, the Court declines to address the merits of Defendant's argument that the Court should dismiss the

complaint for failure to state a claim upon with relief can be granting pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Memorandum Opinion and Order resolves docket entry number 24.  The Clerk of Court is respectfully directed to enter judgment dismissing the complaint and close this case.

SO ORDERED.

Dated: New York, New York

May 19, 2020

                                                    /s/ Laura Taylor Swain
                                                   LAURA TAYLOR SWAIN
                                                   United States District Judge